[Civ. No. 7433. Second Appellate District, Division One.—January 31, 1933.]

MAUDE L. BARNES BRIDGE, Respondent, v. NEW AMSTERDAM CASUALTY COMPANY (a Corporation) et al., Defendants; JAMES COCHRAN et al., Appellants.

Arthur T. Stollmack for Appellants.

A. Brigham Rose and Bernard Considine for Respondent.

HOUSER, J.—The defendants Cochran, Seanor and Shafer were partners engaged in the business of furnishing so-called criminal bail bonds executed by the defendant New Amsterdam Casualty Company. Broadly speaking, and without reference to either the details contained in, or the legal consequences arising from, the provisions of a written agreement which was in force between the partnership and the bond company,—based upon the fact that the partnership had deposited with the bond company certain collateral as security to indemnify it from any loss that might ensue therefrom, it was understood that the partnership had authority to "fill in" blank bonds which theretofore had been "executed" by the bond company. Also, presumably acting within the provisions of said agreement, in seeking indemnity from possible loss on account of a bond

in the sum of $5,000 executed, or to be executed, in behalf of a person accused of the commission of a criminal offense, the partnership induced plaintiff in the instant action to execute a bond of indemnity in favor of the bond company, and at the same time to execute in favor of the partnership a promissory note in the sum of $6,000, the payment of which being secured by a deed of trust of which one of the partners was the trustee.

The accused person whose appearance in court was guaranteed by the bond, having failed to appear on the date when the action against him finally was set for trial, the trial court ordered the said bond forfeited. Thereupon, following the failure of plaintiff to pay to the bond company, or to the partnership, the amount specified in the bond, plus certain moneys expended by the partnership in causing the accused person thereafter to be surrendered to the court, the partnership instituted the necessary steps precedent to a sale of the real property described in the deed of trust which had been executed by plaintiff. On the day when the sale of the property originally was scheduled to occur, in assumed consideration of having the date of such sale postponed for thirty additional days, plaintiff purportedly agreed in writing with the bond company and the partnership that she would not cause a court injunction to issue restraining such sale; and, in addition thereto, that she would "raise sufficient to pay said indebtedness". In that connection, the bond company denies any knowledge of, or participation in, such assumed agreement. However, after the lapse of said time to which the sale of the property had been postponed, in pursuance of proceedings instituted under the provisions of the deed of trust, an aunt of the plaintiff, in behalf of the latter, bought the property which was the subject of the trust deed for the sum of $6,500 which sum was stipulated between or among the interested parties as being the correct amount of the liability of plaintiff under her bond of indemnity to the bond company and her agreement with the partnership; which sum of $6,500 was paid to and received by the defendants. Some time later, plaintiff deeming herself damaged by reason of certain circumstances connected with the transaction, brought an action against the individual members of the partnership and the bond company to recover a judgment for the $6,500

which had been paid by her to the partnership. On the trial of the action, which took place before the court without a jury, judgment was rendered in favor of plaintiff for the full amount demanded in her complaint, to wit, $6,500. In the absence of the judge who rendered such judgment, a motion for a new trial, presented by the defendants to a different judge, was granted. At the second trial of the action, which occurred before the court sitting with a jury, a verdict for the sum of $6,500 was returned, upon which judgment was entered. It is from the latter judgment that the instant appeal is prosecuted by the individual defendants Cochran, Seanor and Shafer.

 The complaint in the action contained two counts. By the first, in effect, the complaint charged that as an inducement upon which she relied and acted in executing her indemnity bond and her promissory note and deed of trust as aforesaid, the partnership had made certain material, false representations of fact. By reference thereto, and by appropriate allegations therein contained, the second count of the complaint adopted all the allegations contained in the first count thereof, and in substance then alleged that the defendants became and were indebted to the plaintiff in the sum of $6,500. On the first trial of the action no evidence was offered by plaintiff to establish some of the material allegations of fact set forth in the complaint; but additional evidence was offered and received by the trial court in proof of certain other important facts, all of which, to the satisfaction of the trial judge, established the ultimate fact that plaintiff had been defrauded, and that, as a matter of law, was entitled to a judgment against the defendants. In rendering judgment, the trial court ordered that the complaint be amended ''to conform to the proof''. However, no amendment to the complaint was ever filed. On the second trial of the action, the same situation obtained; that is to say, for the purpose of establishing the fraud of the defendants, evidence of relevant and material facts not alleged in detail in the complaint was received by the court and submitted for the consideration of the jury. Nor was any evidence offered by plaintiff as to some of the facts set up in her complaint with reference to the asserted fraud of the defendants. In such circumstances, the defendants complain variously to this court in substance

that plaintiff should not be permitted to predicate a cause of action upon one statement of facts and recover a judgment upon a different set of facts. It is a well-established rule that ordinarily the evidence upon which a judgment in favor of a plaintiff may rest must conform to the allegations contained in the complaint in the action. The purpose of the allegations of fact in a complaint is to apprise the defendant in the action of the grounds upon which the plaintiff relies as a basis for his right to a judgment in his favor. The natural purpose of such rule is to enable the defendant to controvert, to excuse, or to justify such allegation of facts; and undoubtedly, notwithstanding the exception which permits the pleading of at least a common-law action by means of the so-called common counts, which may or may not afford the desired or desirable information of facts upon which the alleged cause of action is based, any rule by which a defendant might be forced to trial without knowledge on his part of the allegation of ultimate facts upon which the alleged cause of action against him may depend would place the defendant at a decided disadvantage. As affecting the instant judgment, it should be remembered that, although the evidence upon which the judgment rests does not correspond to nor reflect all the facts alleged in the complaint, such judgment is the result of the second trial of the action; and, as appears to be conceded by the parties to this appeal, the evidence therein adduced was practically identical with that presented on the first trial. In other words, on the second trial of the action the defendants were in nowise "surprised" by the evidence which was offered by the plaintiff in support of her alleged cause of action. And although theoretically, in the state of the pleading, it may have been error to admit the greater part of the evidence to which reference has been had, it is clear that in its reception on the second trial of the action the defendants were in nowise prejudiced in their substantial rights in the premises. Without a recitation of details, this court is of the opinion that the facts proved by plaintiff to the satisfaction of the jury were sufficient to sustain the cause of action and to entitle plaintiff to the damages awarded to her. In such a situation it follows that because of the error of which the appellants complain, a new trial should not be granted. (Sec. 4½, art. VI, Const.)

■ On the trial of the action, for the purpose of establishing fraudulent acts on the part of the defendants which would have the effect of releasing plaintiff from her contract of indemnity, evidence was received to the effect that, at the time when the bond in question was executed, plaintiff was assured by the defendants that on a specified date the accused person would be placed on trial for the commission by him of the offense of which he was charged. When that date arrived and the said trial did not take place, plaintiff demanded that the said defendant be surrendered into court, and that she be released from her obligation on her bond. In response to such demand, the defendants assured plaintiff "that everything was all right and had been taken care of". In that regard, the evidence further showed that, without the knowledge or the consent of plaintiff, throughout an aggregate period of more than six months the trial of the criminal action was repeatedly postponed; that solely by and with the consent and financial aid of the individual members of the partnership, the defendant in the criminal action was permitted and encouraged to leave the jurisdiction of the trial court and go into the state of Missouri on the mutual or common business of said partnership and the said defendant; and that as well, without the knowledge or the consent of plaintiff, at least one postponement of the trial of said criminal action was secured during the time that the said defendant was thus outside the jurisdiction of the trial court of this state. In the latter connection, the appellants contend that, in the absence of bad faith, the sureties on a bail bond do not lose their rights against their indemnitor by permitting the defendant in a criminal action to leave the jurisdiction wherein he is charged with the commission of a criminal offense. But since the question is only incident to the broader question here at issue, it is apparent that, even conceding (without deciding) the correctness of appellants' contention in that regard, the result could not affect the judgment. Besides, the trial court instructed the jury "that the defendant Springate while out on bond was at liberty to go where he pleased and when he pleased so long as he appeared in court when required". It therefore is apparent that, for the reasons assigned by appellants, they have no just cause for complaint.

■ Appellants complain respectively of the giving by the trial court, as well as of its refusal to give to the jury, certain specified instructions. In none of such specifications of error do the appellants set forth all the other instructions given by the court which relate to the subject matter of either the criticised instruction or the instruction which was refused. The instructions which were given by the court include 26 pages of the record in this appeal. In such circumstances it is too much to expect that this court will search such record for the purpose of discovering whether the several contentions of the appellants regarding the questioned instructions are, or either of them is, tenable. It need only be said that the manner of presentation of such asserted errors is in contravention of the rule of this court.

■ It is contended by appellants that plaintiff was not entitled to a jury trial; and for that reason, as well as from the fact that no findings of fact were made by the trial court, that the judgment should be reversed. In their brief appellants specifically admit that ''on the face of the pleading the plaintiff was entitled to a trial by jury''. But they assert that because on the trial of the action plaintiff proved that certain instruments relied upon by the defendants in defense of the claim of plaintiff were invalid by reason of the fraud of the defendants in obtaining the signature of plaintiff thereto, the nature of the action was so altered that the judge of the trial court only was qualified to render a judgment in the action.

In the case of *Baird* v. *Pacific Electric Ry. Co.*, 39 Cal. App. 512, 515 [179 Pac. 449], the court expressed the rule to the contrary of that asserted by the appellants.

As an additional reason why appellants' several points in that regard should not receive favorable recognition by this court, it appears that at no time during the trial did the appellants voice any objection to a jury trial. The action had been tried once before, and on the second trial the appellants were well aware not only of the issues of the action, but as well of the evidence which in all probability would be introduced. Nor on their motion for a new trial did appellants urge the objection which for the first time is here presented.

In reliance upon their contention that the action was wholly equitable in its nature, appellants urge several objections to the judgment based upon the asserted laches of plaintiff in the commencement of the action. As hereinbefore has been indicated, the action was for the recovery of a judgment for damages. The implied cancellation of the several instruments by means of which plaintiff was either apparently originally defrauded, or which purportedly assisted the defendants in carrying their fraud to completion, was not the object of the action. Under and by reason of fraudulent misrepresentations of fact made by the defendants, plaintiff had been induced to pay, and actually did pay, to the defendants a certain sum of money, which she was seeking to recover. The action was one permitted by law, and was commenced within the statutory period prescribed for the commencement of such an action. That certain *quasi*-equitable issues were later injected into the action could not affect the time following the accrual of plaintiff's rights within which the action was required to be commenced. The doctrine of laches was inapplicable to the situation.

Regarding the assumed arrangement purporting to have been evidenced by a written agreement between all the defendants on the one side and plaintiff on the other (but as to which agreement neither its execution nor the authority by the partnership to execute it on behalf of the bond company is admitted by the latter), by which, in consideration that plaintiff would not cause a court injunction to issue restraining the sale of plaintiff's property under the provisions of her deed of trust, a postponement of such sale was granted to plaintiff on the further condition that, at or before the date of the expiration of the thirty days' postponement, she would pay to the defendants the sum of $6,500, it is variously urged by the appellants that, with knowledge on the part of plaintiff of the prior fraud of the defendants in the transaction between the parties, plaintiff had no legal right either to place any reliance upon any present representations of the defendants, to enter into any new agreements with defendants with reference to the transaction in question, or to ask or to receive from the defendants any favor in connection therewith. But in the first place, the purported written agree-

ment of the parties constituted no legal agreement between or among them. It was not signed by the defendants, or by any or either of them; they were not bound by its terms. Although at the time when said "agreement" was signed by plaintiff she had been informed of the falsity of some of the original inducing representations made by the defendants, she was then again misled by the plausible assurances of the defendants and the concealment of material facts by them respecting several of the important facts which dealt particularly with the disappearance of the defendant in the criminal action. The new "agreement" was exacted from plaintiff on the very day on which her property, the value of which was largely in excess of the amount of her bond, was noticed to be sold, and which agreement might be regarded as having been obtained by a species of duress. In the circumstances thus presented, taken in connection with the additional false representations made to plaintiff by the defendants, the so-called agreement may not be properly regarded as of that consequence as to carry with the act of plaintiff the results to which appellants have directed attention.

Appellants also complain of the admission in evidence of a part only of a deposition of a witness presented by plaintiff. Since the refused portion of the deposition related directly not to the alleged facts of the case, but dealt only with the proposed impeachment of a witness for the defendants who had not then testified in the case, it is clear that the defendants had no right to insist that at the time the main portion of the deposition was offered in evidence that part which is the subject of the present objection be read to the jury. The impropriety of impeaching a witness before he testifies in a case is apparent.

Prejudicial error is also predicated upon the refusal by the trial court to admit two items of evidence, each of which was favorable to the contention by the defendants regarding the date when plaintiff acquired knowledge of the falsity of some of the representations of fact previously made to her by the defendants. But assuming (without deciding) that the rejected evidence should have been admitted, it is inconceivable that, if admitted, its weight would have resulted in any way favorable to the defendants in the action. In such circumstances and for such a rea-

son, a new trial should not be granted. (Sec. 4½, art. VI, Const.)

Each of the other alleged errors of which appellants complain being by the conclusion herein reached rendered immaterial, or being dependent upon a conclusion in their favor of one or more of the points hereinbefore ruled adversely to their contention, it becomes unnecessary to discuss either of such alleged errors.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.